UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
━━━━━━━━━━━━━━━━━━━━━━━━━━━━

BEECHWOOD RESTORATIVE CARE
CENTER, BROOK CHAMBERY, and
OLIVE CHAMBERY,

                          Plaintiffs,

            -vs-                                    **MOTION IN LIMINE**
                                                   **MEMORANDUM**
                                                   **02-CV-6235**

LAURA E. LEEDS, EDMUND RUSSELL
ALTONE, ROBERT W. BARNETT,
ANNA D. COLELLO, ARLENE L. GRAY,
HENRY M. GREENBERG, ANTONIA C.
NOVELLO, STEVEN B. STEINHARDT,
DENNIS P. WHALEN, SANFORD RUBIN,
SUSAN T. BAKER, SHARON A. CARLO,
CYNTHIA T. FRANCIS, NAOMI B. HAUSER,
JOSEPH P. MOORE, MARY ELIZABETH
RICH, and BARBARA W. SANER,

                          Defendants.
_____

## THE COURT SHOULD NOT
## ADMIT INADMISSIBLE EVIDENCE

        Plaintiffs have submitted a twenty-two (22) page list of proposed exhibits.

Defendants by this motion in limine ask the Court to preclude the use of some of

the proposed exhibits and related testimony. In addition, the defendants bring to

the Court's attention exhibits they wish to introduce.

### 1.  Standard for a Motion in Limine

        "The purpose of a motion in limine is to allow the trial court to rule on the

admissibility and relevance of certain anticipated evidence before that evidence

is actually offered at trial. See Luce v. United States, 469 U.S. 38, 40 n. 2, 105

S.Ct. 460, 83 L.Ed.2d 443 (1984); Palmieri v. Defaria, 88 F.3d 136, 141 (2d

Cir.1996). The trial court should only exclude the evidence in question "when [it] is clearly inadmissible on all potential grounds." United States v. Paredes, 176 F.Supp.2d 179, 181 (S.D.N.Y.2001)." M.A.R. ex rel. Reisz v. U.S., 2011 WL 6188726, 1 (S.D.N.Y. 2011).

When evaluating this motion the Court will need to determine the scope of the trial. Will this trial be a complete history of all events with every document being admitted or will the trial focus on what each remaining defendant said and did with regards to retaliation?

Defendants submit that to fully evaluate this application it would be useful for the Court to understand what witnesses will be called at the trial. Defendants ask that the Court direct plaintiff's to submit a proposed witness list to assist the analysis of the motion in limine.

## 2.  Attorney General MFCU Evidence

Plaintiffs seek admission of documents from the Attorney Generals Office Medicaid Fraud Control Unit (MFCU) and testimony relating to an investigation by former Assistant Attorney General Jerry Solomon. For example, plaintiffs seek to admit Exhibits 62, 79, 138, 209 to 214, 376, 377, 510, 511, 550, 590, 622-625. Plaintiffs seek admission of documents such as the Memorandums of Understanding between MFCU and the DOH and Department of Social Services, two (2) letters from AAG Solomon issued pursuant to the Memorandum of Understanding, a subpoena, a memorandum opening the file, a final report of auditor, a survey summary and the closing memorandum (Exhibits 209, 210, 211, 212, 213, 214, 376, 377, 510, 511, 550). The evidence related to the

Attorney General's Office investigation is hearsay, not relevant and unduly prejudicial.

In 1999, MFCU was looking for facilities to investigate (Exhibit 79, Solomon transcript pages 44). The decision to investigate was Solomon's (Solomon transcript pages 44).The fact that they conducted investigations and the conclusions from any investigations is not relevant to whether any defendant retaliated against plaintiffs.

In a memorandum dated April 10, 2003, AAG Solomon summarized MFCU's investigation into possible criminal activity by Beechwood (Exhibit 212). The memorandum was written the way it was because the author's supervisor wanted certain information included (Solomon transcript pages 101). The memorandum summarized the administrative hearing, contained Solomon's opinions about Beechwood and arrived at a conclusion of whether there should be a criminal prosecution. Solomon concluded "This facility has been closed and the owners heavily fined. Based upon insufficient evidence upon which to base a criminal prosecution, I recommend this investigation be closed." (Exhibit 212, page 7).

Solomon's memorandum is hearsay. Although Federal Rules of Evidence Rule 803(8) has a hearsay exception for public records and reports, such a report should not be admitted. The memorandum is not a public record but rather an internal memorandum about whether Beechwood would be criminally prosecuted. The memorandum contains hearsay, summaries of the administrative hearing transcript and witnesses statements and the author's

opinions. The report is not relevant because it deals with the viability of a criminal prosecution.

Even if the memorandum was admissible pursuant to an exception to the hearsay rule, "a district court 'must always determine whether the prejudicial effect of admitting such unreliable information may outweigh its probative value and thereby render it inadmissible under Fed.R.Evid. 403.'" Young v. James Green Management, Inc., 327 F.3d 616, 624 (7th Cir. 2003)(EEOC determinations not admitted). The district court has broad discretion in making decisions under Rule 403's probative-prejudice balancing analysis. Fiacco v. City of Rensselaer, 783 F.2d 319, 327-28 (2d Cir.1986).

The use of the Solomon memorandum and related evidence would be unduly prejudicial. FRE 403 states:

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

Using the memorandum would cause unfair prejudice. The investigation was conducted by the Attorney General's Office, the same office that is defending the defendants, which would be prejudicial to the defendants, in part, because of the confusion to the jury.

The contents of the memorandum would confuse the issues and mislead the jury. The memorandum analyzes the Beechwood events for possible criminal violations of a theft from the Medicaid program (Exhibit 212, page 6). Solomon wrote :

In deciding whether there was sufficient evidence of criminal conduct, a determination had to be made as to whether or not the evidence that served as a foundation for the charges sustained by the ALJ, by a preponderance of the evidence, would be sufficient to satisfy our burden of proof beyond a reasonable doubt. It is my opinion that it would not.

(Exhibit 212, page 4). Solomon's conclusion that there was "insufficient evidence upon which to base a criminal prosecution" would only confuse and mislead the jury. Solomon's evaluation into possible criminal charges would not assist the jury in evaluating the retaliation claim.

The memorandum would also needlessly present cumulative evidence and usurp the power of the jury to independently evaluate the evidence. Solomon's opinions are his and are not admissible. Solomon's analysis of the hearing evidence and summaries of witnesses' statements would not be admissible. The jury will hear the evidence as it relates to retaliation and this summary would be cumulative of that testimony as well as provide inadmissible evidence.

The report and evidence related to the Attorney General's MFCU relationship to the Department of Health should not be admitted.

### 3.  Justice Affronti's Decision

Plaintiffs seek admission of Judge Affronti's decision denying the DOH caretaker application. See Exhibit 238. The decision is not relevant to the issue before the Court.

"The Federal Rules of Evidence govern the admissibility of evidence at trial. Under Rule 402, evidence must be relevant to be admissible. Fed.R.Evid. 402. Evidence is relevant if it has a tendency to make a fact that is of

consequence in determining the action more or less probable than it would be without the evidence. Fed.R.Evid. 401. In addition to relevancy, admissibility turns on the probity and prejudice of the evidence in question. Under Rule 403, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Fed.R.Evid. 403. The Second Circuit has instructed that the "[d]istrict courts have broad discretion to balance value against possible prejudice" under Rule 403. United States v. Bermudez, 529 F.3d 158 (2d Cir.2008)." M.A.R. ex rel. Reisz v. U.S., 2011 WL 6188726, 1 (S.D.N.Y. 2011).

Judge Affronti declined to appoint a caretaker and noted that the administrative hearing would be commencing in a few days, the administrative proceedings would be protracted and probably redundant with any hearing held by the Court (Exhibit 238 pages 6-8). The Court deferred to the expertise of the Department of Health's Administrative Law Judge (Exhibit 238 pages 6-7). The Court also indicated that he observed inconsistent findings by the DOH which is an opinion not relevant to the jury's decision on whether a particular defendant retaliated (Exhibit 238 page 7).

Judge Affronti's written decision is not relevant to the issue of retaliation. Furthermore, a judicial decision on an ancillary matter would cause unfair prejudice, confusion of the issues and mislead the jury. FRE 403.

If admissible the defendants may wish to submit the application (Exhibit 235) that was before the Court.

**4.  Settlement discussions**

Plaintiffs seek admission of discussions relating to settlement of the issues between plaintiffs and the Department of Health. For example, plaintiffs offer Exhibits 131, 132, 133, 194, 244-46, 251, 519, 534. Any use of settlement discussions to support plaintiffs' allegations of retaliation is not admissible. FRE 408.

Rule 408, entitled "Compromises and Offers to Compromise," provides:

(a) Prohibited uses.-Evidence of the following is not admissible on behalf of any party, when offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount ...:

(1) furnishing or offering or promising to furnish-or accepting or offering or promising to accept-a valuable consideration in compromising or attempting to compromise the claim; and

(2) conduct or statements made in compromise negotiations regarding the claim, except when offered in a criminal case and the negotiations related to a claim by a public office or agency in the exercise of regulatory, investigative, or enforcement authority.

Any use of the discussions, emails and correspondence related to the settlement discussions is not admissible. See Rubery v. Buth-Na-Bodhaige, Inc., 470 F.Supp.2d 273, 279 (W.D.N.Y. 2007)(information disclosed during the course of settlement discussions is inadmissible under Federal Rules of Evidence 408).

Plaintiffs seek to use documents and presumably testimony regarding settlement discussion against Department of Health attorney defendant Altone. At the time the documents were written, plaintiffs had a §1983 action against employees of the Department of Health and the administrative hearing was

pending. The settlement discussions, including the behind the scene analysis of how to proceed with the settlement discussions, are not admissible.

There should not be an issue that the communications were related to settlement discussions. Mr. Cooman's own words referred to the "proposed settlement." See Exhibit 299. A review of the exhibits indicate that the authors treated the discussions as settlement discussions.

If settlement testimony and documents were to be admitted, defendants would submit Exhibits 250 and 292.

**5.  Altone referrals**

Plaintiffs seek admission of evidence regarding Altone's referrals after the revocation hearing. For example, plaintiffs offer Exhibits 131, 132, 133, 134, 247, 249, 256, 259, 260, 355, 363 which are notes, emails and a memorandum related to Department of Health attorney defendant Altone's referrals to other Department of Health employees regarding licensing. This was discussed at Altone's deposition (transcript pages 260-266).

As shown by Exhibit 131, Colello to Altone, stating: "We cannot agree to forgo the DOH right to take action against Mr. Chambery's administrator's license. The federal regulations require that the licensure board be notified of any action taken against a provider." This was also discussed in Exhibit 132. Altone's referrals were required by law and are not relevant to the issue of retaliation.

If the Court admitted the proposed documents regarding settlement, then defendants would offer Exhibits 239, 250, 254, 255, 257, 356.

The referrals of different people for possible action is not relevant to Mr. Altone's retaliatory intent. In addition this evidence would cause unfair prejudice, confusion of the issues and mislead the jury. FRE 403.

**6. Ethics Commission**

Defendant Laura Leeds was cited with a Notice of Reasonable Cause by the New York State Ethics Commission (Exhibit 349). Plaintiff was accused of a violation of New York State Public Officers Law §73(8)(a)(i), which reads:

> 8. (a)(i) No person who has served as a state officer or employee shall within a period of two years after the termination of such service or employment appear or practice before such state agency or receive compensation for any services rendered by such former officer or employee on behalf of any person, firm, corporation or association in relation to any case, proceeding or application or other matter before such agency.

McKinney's Public Officers Law §73. The specific allegation is that in November, 2000, after leaving state service, Leeds participated in a meeting in violation of the Public Officers Law.

Exhibit 350 is a disposition agreement in which Leeds agreed to pay $2,500 to resolve the litigation.

Plaintiffs seek admission of the documents and presumably testimony by the defendant Leeds (Leeds deposition transcript pages 430-431). The alleged ethical violations do not relate to Beechwood and therefore are not admissible as they are not relevant. Furthermore, plaintiffs should not be allowed to question of Leeds about the allegation as they are not proper material for impeachment. FRE 404 and 608.

Even if there was some method of admissibility, the use of the violation and related evidence would cause unfair prejudice, confusion of the issues and mislead the jury. FRE 403.

**7.   Inspector General Investigation**

Plaintiffs seek admission of Exhibit 190 - a report from the Office of Inspector General's Office. This document is not relevant, is hearsay and if there was any probative value, the value of the document is outweighed by it's prejudicial nature. FRE 403. The investigation addressed in Exhibit 190 did not arise from the Beechwood activities and addressed an investigation into wrong doing of non-parties. The only reference to any defendant was to Laura Leeds on pages 6 and 9.

The report is hearsay, not relevant and even if admissible, unduly prejudicial. FRE 403.

**8.   Litigation responses**

Exhibit 574 is a memorandum from Sue Baker and Sharon Carlo responding, paragraph-by-paragraph, to plaintiffs' first §1983 complaint.

The entry of the exhibit is improper because the contents of the exhibit are responses to a document not in evidence. The responses therefore are not in context as plaintiffs' complaint is not an exhibit, nor should it be an exhibit.

It is believed that the substance of the exhibit will be addressed by testimony of other witnesses and exhibits and therefore is not necessary to being admitted.

10

Even if there was some method of admissibility, the use of the responses to plaintiffs' Federal lawsuit would cause unfair prejudice, confusion of the issues and mislead the jury. FRE 403.

**9.     Witnesses personal notes**

Plaintiffs seek admission of personal notes taken by parties and non-parties. Some defendants took notes when attending meetings or participating in telephone conversations. For example, plaintiffs offer Exhibits 29, 45, 58, 61, 62, 69, 71, 73, 74, 77, 80, 122, 203, 204, 229, 259, 260, 284, 364-370, 402, 501, 503, 504, 516, 526, 553-555, 557-558, 569, 574, 593, 594, 595, 598 and 599. The personal notes are inadmissible as they are hearsay and do not qualify as a business records.

Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. FRE 801(c). Hearsay is inadmissible at trial unless it falls under one of the exceptions listed in Rule 803 of the Federal Rules of Evidence. See FRE 802. It is plaintiffs' burden to establish the admissibility of their evidence. See, Tradax Energy, Inc. v. Cedar Petrochemicals, Inc., 317 F.Supp. 2d 373, 378 (S.D.N.Y. 2004).

The notes should not be admitted pursuant to the business record exception to the hearsay rule. See FRE 803(6). Specifically, that rule permits courts to admit records which would otherwise be hearsay if the testimony of the custodian or other qualified witness shows that the records were (1) kept in the

course of regularly conducted business activity and (2) it was the regular practice

of that business activity to keep such records. Id.

Proving the document is authentic is not sufficient to make the document

admissible.

> In any event, in the context of Rule 803(6), this Court has explained that "authentication alone is not enough." United States v. Robinson, 700 F.2d 205, 210 (5th Cir.1983). In Robinson, the defendant objected to the admission of handwritten notes that had been taken during a county board of supervisors meeting. Id. The notes had been introduced along with a packet of county documents through the county records custodian. Id. This Court explained that, although the notes had been properly authenticated, "[f]or the notes to be admissible under Rule 803(6), the government also had to establish that 'it was the regular practice of that business activity' to have the notes made." Id. (quoting Rule 803(6)). Because the government failed to do so, this Court found that the notes should not have been admitted. Id. In the instant case, there was no showing that it was Coral's regular practice to make Exhibit 27. Accordingly, the authentication ruling standing alone is insufficient to meet the requirements of Rule 803(6). We therefore conclude that the district court abused its discretion in admitting Exhibit 27.

U.S. Commodity Futures Trading Com'n v. Dizona, 594 F.3d 408, 417 (5th Cir.

2010), see also, U.S. v. Freidin, 849 F.2d 716, 723 (2d Cir.1988)("memorandum

was not shown to have been made pursuant to a "regular practice" of Touche

Ross, it must be held inadmissible. See United States v. Robinson, 700 F.2d

205, 210 (5th Cir.1983)").

In the matter before the Court, the act of keeping notes was a personal

preference, not a job requirement. Therefore, the personal notes should not be

admitted into evidence because there is no evidence that the notes were kept in

the regular course of business and it was the regular practice of the DOH to

require that employees keep such records. FRE 803(6). Amerisource Corp. v.

RxUSA Int. Inc., 2009 WL 235648 (E.D.N.Y 2009).

Plaintiffs may argue that the notes fall under an exception to the hearsay rule. It is submitted that plaintiffs will need to address what exception applies to each exhibit. Even if a portion of the exhibit was deemed admissible, to the extent the notes contain inadmissible hearsay, that portion of the notes should be excluded and properly redacted. FRE 805.

**10. Non-party affidavits, interrogatories and memorandums**

Plaintiffs seek admission of affidavits and interrogatories from people that are no longer defendants. For example, plaintiffs offer Exhibits 113, 115, 147, 170, 171, 191, 205, 216, 222, 223, 271, 279, 281, 306, 308, 313 and 527. The affidavits, interrogatories and memorandums authored by non-defendants are hearsay and should not be admitted.

If the affidavits of non-parties are admissible, defendants would offer Sue Kelly's affidavit (Exhibit 346).

**11. Emails from non-parties**

Plaintiffs seek admission of emails from non-parties. For example, plaintiffs offer Exhibits 23, 25, 27, 28, 40, 41, 60, 116, 125, 128, 129, 132, 136, 173, 178, 188, 202, 243, 285, 318, 352, 354, 358, 413, 506, 507, 518, 523, 534, 560, 561, 565, 566, 567, 568, 573, 576, 585, 586, 587, 607, 611 and 657. The emails are not relevant to show retaliation by a defendant and are hearsay.

The analysis should begin with asking whether the document is relevant to a defendant (see FRE 401, 402,). The emails of non-parties are not relevant as they are not statements of defendants.

If the email is authored by a non-defendant, the Court should analyze how that document is to be used against a particular defendant. For example, is the exhibit going to be used to explain a series of emails? If the email does not have some independent use, merely being sent an email or named in an email does not make the document relevant.

The analysis should continue with asking whether the document was based on personal knowledge of the particular defendant (FRE 602). In some emails, the sender does not have personal knowledge of the contents and is summarizing information of another. This is common in the emails sending information up the bureaucratic ladder. In some of the documents there is double hearsay. FRE 805. In those instances where the content is not based on personal knowledge or includes double hearsay, the email should be inadmissible.

The next question is admissibility against the particular defendant. Although a document is probably admissible as an admission against the author (FRE 801(d)(2)), if the author of the email is not a defendant, the document should be considered inadmissible hearsay. Hearsay is a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted. FRE 801(c).

The exhibits listed in this section are emails, or other writings, made by a non-defendant and are inadmissible hearsay. Since there is no conspiracy, the plaintiffs should not be allowed admit evidence pursuant to co-conspirator exception. FRE 801(d)(2)(E).

Plaintiffs should not be allowed to admit the emails pursuant to the business records exception to the hearsay rule. Emails between DOH employees are not necessarily business records. FRE 803(6).

> Neither a paper document, such as a letter or memo or note, nor an email, falls within the business-records exception of Rule 803(6) simply because it concerns a business matter. See, e.g., United States v. Robinson, 700 F.2d 205, 209-10 (5th Cir.1983). Courts have held that conventional letters, memos, or notes are admissible under the business records exception if they are regularly made in furtherance of the employer's needs and not for the personal purposes of the employee who made them. See, e.g., Broadcast Music, Inc. v. Xanthas, Inc., 855 F.2d 233, 238 (5th Cir.1988)(finding that letters did not fall within the business records exception); Robinson, 700 F.2d at 209-10 ("We conclude that these notes may not be considered 'records of regularly conducted activity,' admissible under Rule 803(6), Federal Rules of Evidence, absent a showing that [an employee] regularly compiled them as part of his official duties.")(footnote omitted). Courts have applied a similar approach to emails. A party seeking to introduce an email made by an employee about a business matter under the hearsay exception under Rule 803(6) must show that the employer imposed a business duty to make and maintain such a record. Courts examine whether it was the business duty of an employee to make and maintain emails as part of his job duties and whether the employee routinely sent or received and maintained the emails. See DirecTV, Inc. v. Murray, 307 F.Supp.2d 764, 772-73 (D.S.C.2004)(finding that sales records contained in emails were admissible under the business records hearsay exception when the sales orders were regularly received by email and the emails were retained as records of each order); New York v. Microsoft, No. CIV A. 98-1233(CKK), 2002 WL 649951, at *2 (D.D.C. Apr.12, 2002)(declining to admit emails under the business records hearsay exception because there was a "complete lack of information regarding the practice of composition and maintenance of" the emails); United States v. Ferber, 966 F.Supp. 90, 98 (D.Mass.1997)(holding that "in order for a document to be admitted as a business record, there must be some evidence of a business duty to make and regularly maintain records of this type," and finding that emails submitted by the government did not fall under the business records exception because "while it may have been [an employee's] routine business practice to make such records, there was no sufficient evidence that [the employer] required such records to be maintained."); but see Piere v. RBC Liberty Life Ins., Civil Action No. 05-1042-C, 2007 WL 2071829, at *2 (M.D.La. July 13, 2007)(finding that emails fell within Rule 803(6) because they were prepared by employees "during the ordinary course of business," but declining to note whether it was the business duty of the employees to

15

make and maintain emails as part of their job duties).

Canatxx Gas Storage Ltd. v. Silverhawk Capital Partners, LLC  2008 WL 1999234, 12 (S.D.Tex. 2008). See also, Morisseau v. DLA Piper, 532 F.Supp.2d 595, 621, fn 163 (S.D.N.Y.2008), affirmed, 355 Fed.Appx. 487 (2d Cir. 2009)(E-mail created within business entity does not, for that reason alone, satisfy business records exception of hearsay rule.)

Emails must be made by employees under an obligation to write such information. Park West Radiology v. CareCore Nat. LLC, 675 F.Supp.2d 314, 333, 2009 WL 4277106, 14 (S.D.N.Y. 2009)("The business records exception to the hearsay rule does not apply to the Dutchess County evidence." "The … employees were not under an obligation to create the emails as a record of regularly conducted business activity."). The emails submitted to the Court were not made by employees under an obligation to write the emails.

Emails should not be considered admissible under the business records exception if they were casually made statements that were not made as part of the business record. An email sent at an employee's sole discretion should not be admitted as a business record.

Some exhibits may be admissible as to one defendant, but not another, the Court in such circumstances should restrict the evidence to its proper scope. FRE 105.

**12. Letters**

Plaintiffs seek admission of letters authored by non-defendants. For example, Exhibits 59, 135, 193, 301, 505, 520, 628, 646-653. As with emails discussed above, the letters are not relevant and are hearsay.

The letters are not relevant. Some of the letters are from plaintiff or his counsel (Exhibits 59, 301, 320, 337, 344, 519, 646-653). These letters do not show retaliatory intent of a defendant. Nor is there evidence connecting the letters to a defendant. For example, Mr. Chambery's letters to various state and federal officials were not copied to any defendant, nor is there evidence that a defendant reviewed the correspondence (Exhibit 59).

The letters written by non-defendants are hearsay and require an analysis similar to the arguments raised in the email section.

**13. Reports**

Plaintiffs seek admission of various reports and charts. For example, see Exhibits 551, 552, 606, 658-661. The reports and charts are not relevant to the issue of retaliation and are hearsay. Furthermore, the documents would cause unfair prejudice, confusion of the issues and mislead the jury. FRE 403.

**14. Letters of Interest**

Plaintiffs seek admission of letters from a non-party seeking to enter into non-binding letters of interest. For example, see Exhibits 525, 621. These letters are hearsay and not relevant. The plaintiffs did not accept the proposal nor accepted any offers to sell the business. Furthermore, the documents would cause unfair prejudice, confusion of the issues and mislead the jury. FRE 403.

**15. Regulations arising from Langevald litigation**

Plaintiffs seek admission of documents relating to the formation of regulations arising from the Langeveld litigation. See Exhibits 205, 225, 335 and 533. The issue of whether the DOH made the actual regulations is not relevant to the issue of retaliation. Furthermore, the documents would cause unfair prejudice, confusion of the issues and mislead the jury. FRE 403.

**16. Tape recording and transcript**

Plaintiffs seek to offer a tape recording and transcript of a non-party's, Steven Steinhardt, message on Mr. Cooman's voice mail. See Exhibits 227 and 227A. The recording is hearsay and not relevant to any defendant. Furthermore, the recording would cause unfair prejudice, confusion of the issues and mislead the jury. FRE 403.

**17. Time Records**

A group of exhibits relate to time records of surveyors investigating Beechwood. For Example, plaintiffs offer Exhibits 5, 9, 93, 94, 95, 103, 106, 141, 145, 149, 150, 152, 158, 159, 297, 562, 602, 603, 604, 605, 614 and 620. The time records of parties and non-parties are not relevant to whether the defendants retaliated against plaintiffs.

**18. Relevancy**

Plaintiffs seek admission of various documents that are not relevant to the issue before the Court. For example, plaintiffs offer Exhibits 4, 48, 56, 63, 64, 81, 101, 114, 138, 187, 226, 277, 278, 304, 305, 320, 338-344, 359-362, 372, 392, 400, 408, 515, 533, 591, 592, 596, 597, 616, 617, 655-657.

These miscellaneous documents are hearsay and not relevant to any defendant. Furthermore, the documents would cause unfair prejudice, confusion of the issues and mislead the jury. FRE 403.

**19. Redaction**

There are many exhibits with writing on them which if admissible require redaction. For example, the notes and comments on Exhibits 14, 59, 168, 175, 195 and 384 require some form of redaction. Some exhibits may be admissible in part, but require redaction as to non-admissible parts. For example, see Exhibit 92 for Francis interrogatory response, Exhibit 241 for Altone's interrogatory response, Exhibit 318 for Karen Cornwell's comments or Exhibit 329 for Leeds' interrogatory response. Other exhibits have highlighted portions. For example, see Exhibit 36.

**20. Duplication**

There are exhibits that are listed under more than one exhibit number. For example, plaintiffs offer Exhibits 36 and 121, 43 and 88, 67 and 109, 73 and 122, 76 and 82 and 123, 84 and 127A, 174 and 268, 195 and 240, 206 and 334. They are the same exhibit. If admitted, the document should only be admitted once.

**21. Antonia Novello's conviction**

Although not listed as a document by plaintiff, defendants seek an order directing the plaintiffs not to mention Commissioner Novello's criminal conviction. Defendants do not intend to call Commissioner Novello as a witness. The

convictions, which is unrelated to this lawsuit, has no relevance at the trial and therefore plaintiffs should be directed not to mention the conviction.

## 22. Dennis Whalen's ethical violation

Although not listed as a document by plaintiffs, defendants seek an order directing the plaintiffs not to mention Deputy Commissioner Whalen's ethical violation (Whalen page 147, Exhibit 326). Defendants do not intend to call Mr. Whalen as a witness. The violation, which is unrelated to this lawsuit, has no relevance at the trial and therefore plaintiffs should be directed not to mention the violation.

## 23. The use of litigation software

At a previous conference with the Court, plaintiffs stated their intention of using litigation software. Defendants' counsel has followed up with plaintiffs' counsel regarding what type of software and was advised that a decision would be made in the near future. To date, defendants have not been advised of the software to be used at trial.

Defendants ask the Court to direct an immediate response or preclude plaintiffs from using any software at time of trial. Defendants need time to obtain approval and order the software as well as the hardware needed to operate such software. Additional time will be needed to learn how to use the software.

Accordingly, the Court is asked to preclude the use of any litigation software at trial unless plaintiffs promptly advise defendants of the software.

**24. Defendants Proposed Exhibits**

    **a.  Prior Decisions**

Defendants seek admission of documents relating to prior decisions relating to Beechwood. Specifically defendants seek to admit the New York State Administrative Law Judge's (ALJ) decision, the Federal Administrative Law Judge's decisions and this Court's decision relating to the federal administrative proceedings.

Upon information and belief, based on plaintiffs' counsel's representations in Court, there is no opposition to the admission of the New York State Administrative Law Judge's decision. This understanding should be formalized.

Furthermore the federal administrative proceedings should also be admissible. A federal ALJ held a hearing on April 3 and 17, 2001 which determined that Beechwood was not in substantial compliance and sustained HCFA's determination to terminate Beechwood. Beechwood Sanitarium v. Centers for Medicare & Medicaid Services, DAB CR 821, 2001 WL 1329831 (2001). Beechwood appealed the ALJ's decision to the Department of Health and Human Service's Departmental Appeals Board ("DAB"); the Board reversed and remanded the case to the ALJ for further proceedings, including a new decision. Beechwood Sanitarium v. Centers for Medicare & Medicaid Services, DAB CR 1824, 2002 WL 848030 (2002).

On remand, the ALJ again upheld HCFA's termination of Beechwood. Beechwood Sanitarium v. Centers for Medicare & Medicaid Services, DAB CR 966, 2002 WL 31599189 (2002). Beechwood again appealed to the DAB, which

held that the ALJ's findings of fact and conclusions of law in both of decisions should be sustained with two (2) exceptions. Beechwood Sanitarium v. Centers for Medicare & Medicaid Services, DAB No.1906, 2004 WL 230866 (2004). The DAB stated that "[i]n the context of this case and the findings which [the DAB] ha[d] sustained, any outcome of any further review of findings not already evaluated could not alter the clear evidence of noncompliance of a kind more than adequate to support the imposition of the appealed remedies." Id.. The DAB concluded that the ALJ did not err in concluding that HCFA had the authority to impose the remedies appealed by Beechwood.

The federal administrative determination was appealed to this Court which upheld the administrative decision. Beechwood Restorative Care Center v. Thompson, 494 F.Supp.2d 181 (W.D.N.Y. 2007).

The decisions are relevant and critical to the defense of this lawsuit because they show there was no liability under the Mt. Healthy decision. "If the plaintiff satisfies his burden, the defendants must show by a preponderance of the evidence that they would have disciplined the plaintiff 'even in the absence of the protected conduct.' Graham v. Henderson, 89 F.3d 75, 79 (2d Cir.1996) (citations omitted)." Bilal v. New York State Dept. of Corrections, 2010 WL 2506988, 15 (S.D.N.Y. 2010). The decisions of the State and Federal ALJs, as well as the decision of this Court, support the proposition that the defendants would have disciplined plaintiff even in the absence of the protected conduct.

The decisions are also relevant to show that there was an exercise of independent judgment that would break the chain of causation. See Wray v. City

of New York, 490 F.3d 189, 193 (2d Cir. 2007); Anemone v. Metropolitan

Transportation Authority, 2008 WL 1956284, 10 (S.D.N.Y. 2008). The decisions

of each ALJ and this Court will support the defense that there was a break in the

causation.

Furthermore, the decisions would be relevant with regards to the issue of

damages as Beechwood was closed by Federal action. On June 29, 1999,

Chambery received a notice of termination from HCFA (Chambery 199-200). As

a result of no longer being eligible for Federal funds, this was a virtual death

notice for Beechwood (Chambery 201-03; HT1912). Beechwood received a

substantial portion of their income from federal funding and the insurance

companies and HMOs will not use a facility that is not Medicare certified

(Chambery 201; HT1912). If the jury understands that the Federal government

closed Beechwood, this would significantly impact any damages.

**b.  Deposition Exhibits**

Defendants seek admission of the following deposition Exhibits: 26, 52,

98, 105, 120, 181, 282, 300, 336 and 513.

**c.  Defendants reserve the right**

The defendants reserve the right to submit additional exhibits in the event

the Court allows admission of other exhibits. For example, if the Court allows

Judge Affronti's decision, then defendants would seek admission of Exhibit 235,

the application for a caretaker.

**25. Jury questionnaire**

Defendants do not oppose a jury questionnaire but do oppose some of the questions and presentation of the proposed form. Defendants submit the questionnaire should be used in a neutral manner merely to illicit general facts about the prospective juror's history.

For example, defendants object to #17 asking whether the prospective juror considered placing a family member in a nursing home and decided against it,  #18 asking for general thoughts or impressions of nursing homes, #19 asking if you ever worked for an employer subject to government inspections, #20 asking if the prospective juror has ever been responsible for setting policies at work, #21 asking if the prospective juror has ever been responsible for handling complaints. Defendants do not object to asking about the prospective juror's employment history and job description. Defendants do not oppose if the prospective juror has ever had family in a nursing home.

Proposed question #22, about the prospective juror's litigation experience, question #23, limits on jury awards and question #24, impartiality are best handled by the Court at the time of trial.

Defendants ask that #12 about dealings with the DOH should be expanded to any aspect of New York State government.

**CONCLUSION**

It is requested the Court issue an order limiting the admissibility of plaintiffs' evidence, allowing the defendants to admit their proposed evidence, as well as additional relief regarding the progress of the trial. Defendants request

the opportunity to reply to any issues or justification to the admissibility of any

exhibits.

Dated: January 6, 2012

                                          ERIC T. SCHNEIDERMAN
                                          Attorney General for the State of New York
                                          Attorney for Defendants

                                          s/Gary M. Levine                  
                                          GARY M.  LEVINE
                                          Assistant Attorney General of Counsel
                                          NYS Office of the Attorney General
                                          144 Exchange Boulevard - Suite 200
                                          Rochester, New York 14614
                                          Telephone: (585) 546-7430
                                          gary.levine@ag.ny.gov

## CERTIFICATE OF SERVICE

I certify that on January 6, 2012, I electronically filed the foregoing Motion in Liminie Memorandum, with the Clerk of the District Court using CM/ECF system, which sent notification of such filing to the following:

1.    Kevin S. Cooman, Esq.
      25 East Main Street, Suite 500
      Rochester, New York 14614

2.    David Rothenberg, Esq.
      45 Exchange Boulevard, Suite 800
      Rochester, New York 14614
      drothenberg@geigroth.com

And, I hereby certify that I have mailed, by the United States Postal Service, the document to the following non-CM/ECF participant(s):

1.    n/a


                              ERIC T. SCHNEIDERMAN
                              Attorney General of the State of New York
                              Attorney for Defendants


                               s/Gary M. Levine_____
                              GARY M. LEVINE
                              Assistant Attorney General of Counsel
                              NYS Office of the Attorney General
                              144 Exchange Boulevard, Suite 200
                              Rochester, New York 14614
                              Telephone:  (585) 546-7430
                              gary.levine@ag.ny.gov