UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

BEECHWOOD RESTORATIVE CARE CENTER,
BROOK CHAMBERY,
OLIVE CHAMBERY,

                              Plaintiffs,

                                                    DECISION AND ORDER

                                                    02-CV-6235L

              v.

LAURA E. LEEDS,
EDMUND RUSSELL ALTONE,
ROBERT W. BARNETT,
ANNA D. COLELLO,
ARLENE L. GRAY,
HENRY M. GREENBERG,
ANTONIO C. NOVELLO,
STEVEN B. STEINHARDT,
DENNIS P. WHALEN,
SANFORD RUBIN,
SUSAN T. BAKER,
SHARON A. CARLO,
CYNTHIA T. FRANCIS,
MARY ELIZABETH RICH,
BARBARA W. SANER,

                              Defendants.

_____

        On September 12, 2011, the Court issued a Decision and Order, 811 F.Supp.2d 667, granting

in part and denying in part defendants' motion for summary judgment in this civil rights action

arising out of the operation of a nursing home, Beechwood Restorative Care Center ("Beechwood"),

in Rochester, New York, by plaintiffs Brook Chambery ("Chambery") and his mother Olive

Chambery.  Trial in this case is currently scheduled to begin on May 14, 2012.

        The factual background of this case is set forth in the summary judgment decision, as well

as in other decisions of this Court and of the Court of Appeals for the Second Circuit, familiarity

with which is assumed.  *See* 436 F.3d 147 (2d Cir. 2006); 494 F.Supp.2d 181 (W.D.N.Y. 2007); 317 F.Supp.2d 248 (W.D.N.Y. 2004).

The gist of plaintiffs' claim is that defendants, who were employed by the New York State Department of Health ("DOH"), waged on "offensive" against Chambery and Beechwood, ultimately leading to the revocation of Beechwood's state-required operating certificate and the facility's subsequent closure, in retaliation for protected speech by which Chambery had challenged regulatory findings and rulings, all in violation of the First and Fourteenth Amendments.

Currently pending before the Court are motions in limine filed by both sides.  The Court heard oral argument on the motions on February 17, 2012.  The following Decision and Order sets forth the Court's rulings on those motions, to the extent that rulings are possible at this time.

## DISCUSSION

### I. Defendants' Motion

### A. New York State Attorney General Medicaid Fraud Control Unit Evidence

Defendants seek to preclude plaintiffs from offering into evidence documents and testimony relating to an investigation of Beechwood that was conducted by the Medicaid Fraud Control Unit ("MFCU") of the New York State Attorney General's Office.  The investigation lasted for nearly three years, and ultimately no charges were brought.

In an internal MFCU memorandum dated April 10, 2003, Assistant Attorney General Jerry Solomon stated that the

> investigation was opened when it was learned that, after a series of surveys found the residents of Beechwood to be in imminent danger, the NYSDOH decided to have a receiver appointed to operate the facility.  When DOH failed to convince the Court to appoint a receiver, it sought revocation of the facility's operating license.  After failing to issue a plan of correction satisfactory to the Department, the facility was closed in July 1999 and residents were transferred to other facilities.

Def. Ex. 510 at 2.  After summarizing the conduct and results of investigation, Solomon concluded, "This facility has been closed and the owners heavily fined.  Based upon insufficient evidence upon which to base a criminal prosecution, I recommend this investigation be closed."  *Id.* at 8.  As stated in another, one-page memo authored by Solomon, the investigation was closed on June 4, 2003.  *Id.* at 1.  A June 9, 2003 memo authored by Neil Davis, who according to plaintiffs was the chief investigator, stated that interviews with patients, staff and others "indicated that patient care at the facility was very good to excellent," and that "SAAG Solomon directed [the] case to be closed based on insufficient evidence upon which to have a criminal prosecution."  Ex. 511.

On August 18, 2003, the Rochester Regional Office of MFCU issued a four-page "Final Report of Auditor" ("Final Report") containing the following "Findings and Conclusions":

> The interviews [of patients, family members, and others] yielded far more positive testaments to the quality of care, staffing levels and family satisfaction than negative reponses.  Several former employees, in addition to some family members, criticized DOH for their handling of the situation.  The core issue the ALJ continually referred to was Beechwood's policy of charting by exception [a record-keeping procedure].  Due to the lack of documentation, it appeared that poor care was given.  However, testimony during the hearing and interviews conducted by our office refuted that contention.  Accordingly, SAAG Solomon, with approval of the Deputy Attorney General, closed the case.

Plaintiffs seek to introduce Solomon's memos, the Final Report, and certain other documents relating to the MFCU investigation, including handwritten notes, a subpoena, letters, and other materials.

Defendants contend that these documents are inadmissible hearsay, and also are excludable under Rule 403 of the Federal Rules of Evidence, as unduly prejudicial.  Plaintiffs contend that these documents are admissible as public records or reports under Rule 803(8), and that they are not *unfairly* prejudicial to defendants.

I find that the Final Report is admissible under Rule 803(8), which permits admission of

[a] record or statement of a public office if:

(A) it sets out:

(i) the office's activities;

(ii) a matter observed while under a legal duty to report, but not including, in a criminal case, a matter observed by law-enforcement personnel; or

(iii) in a civil case or against the government in a criminal case, factual findings from a legally authorized investigation; and

(B) neither the source of information nor other circumstances indicate a lack of trustworthiness.

In my view, the Final Report falls squarely within this Rule.  It contains factual findings by a state agency, resulting from an investigation by that agency regarding a matter within that agency's jurisdiction.

A report that meets the criteria of the rule is "presumptively admissible," *Bridgeway Corp. v. Citibank*, 201 F.3d 134, 143 (2d Cir. 2000), and the party opposing its admission has the burden of showing that the report is not sufficiently trustworthy to justify its admission. *Ariza v. City of New York*, 139 F.3d 132, 134 (2d Cir. 1998).  I conclude that the Final Report does fall within the parameters of Rule 803(8).

I also reject defendants' argument that the report is inadmissible under Rule 403, on the ground that its probative value is outweighed by its prejudicial effect.  A central–perhaps *the* central–issue in this case is what motivated defendants to act as they did with respect to Beechwood.  Defendants contend that they were not motivated by any retaliatory animus, but by their genuine, good-faith belief that the level of care provided by Beechwood was so inadequate that the facility needed to be closed down, to protect the safety of its residents.  Given that position, I believe that it is fair to allow plaintiffs to attempt to show that an agency other than DOH concluded, based on its own investigation of Beechwood, that the facility was generally well run, and its residents well cared for.  The Final Report is plainly relevant in that regard, and is not unfairly prejudicial to defendants.

I recognize that MFCU was primarily concerned with whether criminal charges should be brought against Beechwood or Chambery, rather than with whether Beechwood's operating certificate should be revoked, which was DOH's focus.  In addition, part of Solomon's rationale for

- 4 -

recommending that the investigation be closed was that Beechwood had already been shut down and its owners heavily fined; in other words, that there was no reason to seek to impose punishment on plaintiffs beyond that which had already been meted out.

Arguably, those facts diminish somewhat the probative value of this evidence.  I believe, however, that these are matters going to the weight, not the admissibility, of this evidence.  Certainly defense counsel can argue to the jury that MFCU's findings and conclusions have little bearing on the issues in this case, but on balance, I find that this evidence is not subject to exclusion under Rule 403.

Solomon's memo arguably qualifies as a report of a public office under Rule 803(8), though there are other concerns about its admissibility as well.  Although "interim agency reports or preliminary memoranda do not satisfy Rule 803(8)(C)'s requirements," *Smith v. Isuzu Motors Ltd.*, 137 F.3d 859, 862 (5th Cir. 1998) (citing *City of New York v. Pullman, Inc.*, 662 F.2d 910 (2d Cir. 1981)), nor do the opinions of individual agency employees that are not adopted by the agency itself, *id.*, Solomon's memo is captioned "Closing Memo," and it did form the basis for the closing of the investigation.  In effect, Solomon's recommendations and findings became the position of MFCU itself.

The inquiry does not end there, however.  Even when a report falls within the public records exception of Rule 803(8), that does not automatically render all of its contents admissible.  In particular, although an official's reliance on hearsay in preparing a report does not necessarily preclude the admission of the officials' conclusions contained in the report, *see, e.g., Union Pacific R.R. Co. v. Kirby Inland Marine, Inc. of Mississippi*, 296 F.3d 671, 679 (8th Cir. 2002), that does not necessarily mean that the hearsay statements themselves can come into evidence.  *See, e.g., United States v. Mackey*, 117 F.3d 24, 28 (1st Cir. 1997) ("decisions in this and other circuits squarely hold that hearsay statements by third persons ... are not admissible under this exception merely because they appear within public records"); *United States v. Moore*, 27 F.3d 969, 975 (4th Cir. 1994) ("Even assuming that the report itself fell within the public records exception to the hearsay rule, Fed. R.

Evid. 803(8), Bonet's statement to the examiner, which was contained in that report, is hearsay and inadmissible unless some exception to the hearsay rule applies") (citing Fed. R. Evid. 802); *Parsons v. Honeywell, Inc.*, 929 F.2d 901, 907 (2d Cir. 1991) (factual findings based on a public official's "own observations and knowledge may be admitted but ... statements made by third persons under no business duty to report may not").

Solomon's memo contains statements by third parties that are clearly hearsay, and which do not appear to fall within any hearsay exception. For example, he recites statements made by a patient, identified in the memo as "E.C.," who was interviewed by MFCU investigators. Solomon relates E.C.'s statements concerning the care that she received at Beechwood in some detail. *See* Dkt. #257-18 at 25.

At least in its present form, then, this document is not admissible. There is authority, however, that portions of a report, or a redacted copy of a report, may be admitted into evidence where the report contains inadmissible evidence. *See, e.g., Miller v. Field*, 35 F.3d 1088, 1093 (6th Cir. 1994) (district court should not have allowed police reports containing inadmissible hearsay to be admitted in their entirety; "Instead, only those portions of the reports that constituted either factual findings resulting from the firsthand knowledge of the report's preparer or opinions and conclusions derived from those facts should have been admitted into evidence"); *Ward v. Tinsley*, No. 1:10–CV–329, 2011 WL 6151602, at *2 (N.D.Ind. Dec. 12, 2011) (stating that "[p]resumably, any narrative reports may ultimately be admissible, at least in part, under Federal Rule of Evidence 803(8), although certain hearsay statements within the reports may need to be redacted"). Accordingly, defendants' motion to preclude Solomon's memo from being admitted into evidence is granted, without prejudice to plaintiffs' offering excerpts from, or a redacted version of, the report at a later time.

Plaintiffs also apparently will seek to introduce a copy of what they describe as a "work allocation agreement between DOH and MFCU ... ." Plaintiffs' Mem. of Law (Dkt. #277) at 7, apparently to show how MCFU became involved in investigating Beechwood. The actual exhibit,

- 6 -

however, Ex. 550, on its face is between MFCU and the New York State Department of Social Services ("DSS").  It is not clear how this document relates to DOH.  The Court does not preclude admission of this document at this time, but its admission at trial will be subject to a proper foundation being laid for its admission.

As to the remainder of this evidence relating to the MFCU investigation, the Court cannot issue a definitive ruling at this time.  These various documents, which include personal notes and emails, may be admissible as admissions of defendants or their agents, or as background evidence concerning the MCFU investigation, but again a foundation must be laid, by way of testimony by defendants or the authors of the documents, subject to a showing of relevance.


**B. Justice Affronti's Decision**

On June 21, 1999, New York State Supreme Court Justice Francis A. Affronti issued a decision (Ex. 238) denying DOH's application to appoint a caretaker for Beechwood pursuant to § 2806 of the New York State Public Health Law.  That application, if granted, would have resulted in the ouster of the Chamberys, and their replacement by a caretaker while the proceedings were pending concerning the revocation of Beechwood's operating certificate.

Defendants argue that Justice Affronti's decision is not relevant to the issue of whether defendants retaliated against plaintiffs.  Plaintiffs contend that it is relevant to whether defendants' enforcement actions were justified, and therefore, whether defendants acted in good faith in revoking Beechwood's operating certificate.

In general, a federal court may take judicial notice of the decisions of another court.  *See*, *e.g.*, *520 South Michigan Ave. Associates, Ltd. v. Shannon*, 549 F.3d 1119, 1138 n.14 (7th Cir. 2008); *Mihos v. Swift*, 358 F.3d 91, 100 (1st Cir. 2004).  Defendants do not seem to quarrel with that general principle, but argue instead that Justice Affronti's decision is not relevant to the issues in this case.

As stated, the central issue here concerns defendants' motivation for taking the actions that they did against Beechwood.  Whether those actions were objectively reasonable or justifiable is

directly relevant to that issue.  Justice Affronti's decision, which includes his statement that DOH had submitted "seemingly inconsistent findings" regarding Beechwood's compliance with state regulations, is probative of that issue, and in my view is not overly prejudicial.  I therefore deny defendants' motion to preclude the admission of Justice Affronti's decision, as well as related documents relating to DOH's state court petition for appointment of a caretaker.

## C. Settlement Discussions

Defendants contend that certain exhibits offered by plaintiff relate to settlement discussions between plaintiffs and DOH, and that those documents are therefore inadmissible under Rule 408, which provides that evidence that a party has offered or accepted "a valuable consideration in compromising or attempting to compromise [a] claim," or "statements made during compromise negotiations about [a] claim" are generally "not admissible ... either to prove or disprove the validity or amount" of the claim.

Plaintiffs respond that these communications were not "settlement" discussions at all, but simply concerned plaintiffs' attempt to secure DOH's consent to allow Chambery to sell the Beechwood facility, as a going concern, to a third party while Beechwood still had a valid operating certificate.  Plaintiffs further argue that they are not seeking to admit these exhibits as admissions of wrongdoing by defendants, but as evidence of retaliatory intent, by demonstrating that defendants unreasonably refused to allow them to sell Beechwood, for no other reason than to punish plaintiffs.

The exhibits in question show that during the summer of 1999, plaintiff, through his attorney, Kevin S. Cooman, discussed with defendants "a potential settlement of the [then-pending] administrative proceeding and the potential transfer of Beechwood's operating certificate to a different owner."  *See* Letter from Kevin S. Cooman to Russell Altone, Sept. 16, 1999 (Ex. 245). DOH insisted "that any settlement which involved DOH's acquiescence in or support for an approved transfer of Beechwood's operating certificate would also require that Beechwood release its claims then pending in the Federal civil action in the Western District of New York."  *Id.*

- 8 -

The civil action referred to in Cooman's letter was a civil rights lawsuit that plaintiffs filed in this Court in June 1999, seeking to enjoin DOH from taking further action to revoke their operating certificate.  The Court denied plaintiffs' request for a temporary restraining order on June 17, 1999, on abstention and exhaustion grounds, and the action was dismissed without prejudice, by stipulation of the parties in August 1999.

After the action was dismissed, plaintiffs' counsel again asked whether, in light of the discontinuance of the plaintiffs' civil action, DOH "would still insist on a release of claim by my clients of the previously named State defendants as a condition of the transfer of [Beechwood's] operating certificate to another entity."  Ex. 245.  Defendant Edmund Russell Altone, the director of the DOH Bureau of Administrative Hearings, responded on September 22, 1999, stating that "the Department's position remains that any disposition of the Beechwood adminstrative proceeding, as well as any transfer of the operating certificate to another entity, must include, but is not limited to, release of all claims brought in the Federal civil action in the Western District of New York."  Ex. 246.  There was further correspondence between the parties concerning these matters, but their positions remained essentially unchanged, and they did not reach any agreement. *See* Exs. 251, 292, 299, 519.

Rule 408 does not provide a blanket exclusion of all evidence of statements referencing settlement or the compromise of a claim, but only prohibits the admission of such evidence "to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction."  The rule itself provides that "[t]he court may admit this evidence for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution."  Fed. R. Evid. 408(b).  On its face, subsection (b) thus provides a nonexhaustive list of possible permitted uses of such evidence. The 2011 Advisory Committee Notes indicate that "if offered for a purpose not barred by the Rule, [the] admissibility [of such evidence] remains governed by the general principles of Rules 402, 403, 801, etc."  *See also Weems v. Tyson Foods, Inc.*, 665 F.3d 958, 966 (8th Cir. 2011) ("Evidence

relating to a compromise offer is admissible if 'offered for "another purpose," *i.e.*, for a purpose other than to prove or disprove the validity of the claims that the offers were meant to settle'") (quoting *Trebor Sportswear Co. v. The Limited Stores, Inc.*, 865 F.2d 506, 510 (2d Cir. 1989)).

Thus, a motion to exclude evidence under Rule 408 implicates two fundamental questions: first, was the statement in question made "in compromising or attempting to compromise the claim," or "during compromise negotiations about the claim," and, second, is the evidence being offered "to prove or disprove the validity or amount of a disputed claim," or for some other purpose?  The first part of that analysis can also be broken down into two parts:  (1) whether, at the time of the statements, a "claim" existed, and (2) whether the statements concerned a compromise of that claim.

At the time of Cooman's September 16, 1999 letter to Altone, plaintiffs' civil action had been dismissed.  That dismissal was without prejudice, however, and the administrative proceedings concerning the revocation of Beechwood's operating certificate were still pending.  I find, then, that a "claim" did exist at the time that these letters and related documents were created.  *See Armstrong v. HRB Royalty, Inc.*, 392 F.Supp.2d 1302, 1305 n.7 (S.D.Ala. 2005) ("Assertion of a claim for purposes of Rule 408 does not require articulation of a specific legal cause of action, so long as the general contention has been adequately raised"); (citing *Trebor Sportswear Co. v. The Limited Stores, Inc.*, 865 F.2d 506, 510 (2nd Cir. 1989); *Alpex Computer Corp. v. Nintendo Co., Ltd.*, 770 F.Supp. 161, 163 (S.D.N.Y. 1991) ("All that is needed for Rule 408 to apply is an actual dispute, or at least an apparent difference of opinion between the parties as to the validity of a claim").

It is also apparent that the statements at issue were made relative to attempts to compromise that disputed claim.  Cooman's September 16, 1999 letter to Altone referenced the parties' previous settlement discussions, and the ensuing correspondence was generally couched in terms of settlement.  While Cooman expressed plaintiffs' belief that their execution of a release in favor of defendants was an "unreasonable requirement," *see* Ex. 299, it seems to have been understood

throughout these discussions that what was being discussed was not simply a transfer of Beechwood's operating certificate, but a settlement of plaintiffs' claims.

That alone does not answer the question of whether plaintiffs can seek to introduce this evidence, however. Again, the rule only prohibits admission of evidence of an offer of compromise as proof of liability on the claim that was the subject of the offer itself. Such evidence is not barred by Rule 408 if it is offered to establish liability as to a different claim, or for any other purpose.

In that regard, there is authority that evidence of an offer of compromise, or what on its face appears to be an offer of compromise, may be admissible, not as evidence of the claim underlying the offer, but to establish a claim arising from the so-called offer itself. For example, in *Norden v. Samper*, 503 F.Supp.2d 130 (D.D.C. 2007), the court rejected the defendant employer's "frivolous argument" that a "return-to-work proposal" that it had made to the plaintiff employee was an inadmissible "offer to compromise" the employee's Rehabilitation Act claim, stating that given its onerous terms, the proposal "was not an offer to compromise within the meaning of Rule 408–it was itself a retaliatory, adverse act that violated the Rehabilitation Act." *Id.* at 158 (footnote omitted). *See also Andersen v. Midland Lutheran College*, No. 8:11CV93, 2011 WL 2680487, at *4 (D.Neb. July 8, 2011) (holding that plaintiff was entitled, in opposing motion to dismiss, to rely on defendant's offer-of-settlement letter, "not to show liability for the underlying claims, but for another purpose–that is to establish an independent violation constituting retaliation unrelated to the underlying claims which were the subject of the correspondence").

In the case at bar, plaintiffs state that they will seek to introduce these exhibits to show defendants' retaliatory intent. Their theory is that defendants had no good reason to refuse to allow the Chamberys to sell or transfer Beechwood's operating certificate, or to condition that upon the Chamberys' execution of a release, and that the only reason for defendants' actions in that regard was to punish the plaintiffs.

I also note that defendants state in their brief that "[i]f settlement testimony and documents were to be admitted, defendants would submit Exhibits 250 and 292." Dkt. #275 at 8. Exhibit 292

is a letter from Henry M. Greenberg, DOH's general counsel, to Cornelius D. Murray, an attorney for the New York State Health Facilities Association ("NYSHFA"), who apparently represented Beechwood in some capacity, along with a proposed settlement agreement that had been prepared by DOH.

One of the conditions set forth in the proposed settlement was that Brook and Olive Chambery "shall never again jointly, individually or in combination with any other person" operate or own, or in any way be involved in the operation of a nursing home. Ex. 292 at 8213 ¶ 3. That condition, too, could be viewed as punitive and retaliatory.

Certainly that is not the only interpretation that could be given to this evidence, but that is a matter for argument to the jury. The introduction of this evidence would also have to be accompanied by a proper limiting instruction to guard against the danger that the jury might take it as an implicit recognition by defendants of their wrongdoing or liability. If defendants request that the Court give some particular cautionary instruction, they should prepare a draft instruction for submission at the pretrial conference in this case.

But for the limited purposes for which plaintiffs seek to present this evidence, I find that it is not barred by Rule 408. *See Cassino v. Reichhold Chem., Inc.*, 817 F.2d 1338, 1342-43 (9th Cir. 1987) (Rule 408 inapplicable where "coercive" settlement agreements are probative on the issue of retaliatory discrimination); *Scott v. Goodman*, 961 F.Supp. 424, 438 (E.D.N.Y. 1997) (although defendant's offer to settle would not be admissible as an admission of liability on plaintiff's underlying anti-union claim, "Rule 408's prohibition is inapplicable where, as here, the waiver-of-rights claim is based upon an alleged *wrong–i.e.*, the conditioning of Scott's reinstatement on the waiver of her First Amendment right to commence a lawsuit–committed during the course of alleged settlement discussions," since defendant's insistence on such a waiver was "the very source and substance of a different and independent First Amendment cause of action") (internal quotation marks omitted).

**D. Altone Referrals**

Defendants seek to preclude eleven documents relating to correspondence between defendant Altone and other DOH employees, generally relating to an administrative hearing in 1999 concerning the revocation of Chambery's administrator's license.

The general basis for defendants' objection to these appears to be that they are not relevant to the issues in this case. Defendants also contend that some of Altone's actions referenced in these documents involve offers of compromise that are barred by Rule 408.

At this point, the Court sees no basis for exclusion of these documents. Admissions of a party opponent are generally admissible, *see*, *e.g.*, *Green v. City of New York*, 465 F.3d 65, 77 (2d Cir. 2006), and defendants' objections to these documents are not clearly articulated. Much of what defendants do say about this evidence goes more to the weight than to the admissibility of these documents.

That is not to say, however, that the documents can necessarily be admitted. It remains incumbent upon plaintiffs to establish a proper foundation for these documents and to demonstrate their relevance to an issue before the jury. Plaintiffs must also make clear whether they intend to lay a foundation for these documents through their cross-examination of Altone, or through other witnesses. A definitive ruling on these documents' admission must therefore await trial.

Defendants state that if these documents are admitted, then they will seek to introduce certain other exhibits, which are also emails and memos authored by Altone. The difficulty with that is that while plaintiffs can seek to offer documents written by Altone or other defendants as statements by a party under Rule 801(d)(2), that rule only applies to statements of a party *opponent*; defendants cannot seek to introduce their own statements under this rule. If defendants can demonstrate some other basis for introducing these exhibits, the Court will rule on their admissibility when the offer is made.

- 13 -

**E. Litigation Responses** (Ex. 574)

Exhibit 574 is a memorandum from defendants Susan Baker and Sharon Carlo, addressed to "Interested Parties," and captioned, "Response to 1983 Action by Beechwood Nursing Home." The memo states that it was "prepared to assist with the refutation of charges brought against DOH by Beechwood Nursing Home ... ." A series of paragraphs follows, responding to the allegations in the § 1983 action commenced by plaintiffs in June 1999 (*see* § C, *supra*).

Defendants contend that this document should not be admitted because "the contents of the exhibit are responses to a document not in evidence," *i.e.*, the 1999 complaint. Defendants add that the 1999 complaint "is not an exhibit, nor should it be an exhibit."

Rule 801(d)(2) "specifically provides that a statement is not hearsay if it is offered against a party and is ... ' ... the party's own statement, in either an individual or a representative capacity ... .'" *Spiegel v. Schulmann*, 604 F.3d 72, 82 (2d Cir. 2010). This memo falls into that category, since it was authored by two of the individual defendants. Defendants have proffered no authority that a document is inadmissible simply because it refers to another document that is not in evidence. If defendants believe that Exhibit 574 can only be understood in the context of plaintiffs' 1999 civil rights complaint, then defendants can seek to offer that complaint into evidence.

**F. Witnesses' Personal Notes**

Defendants object to forty-three exhibits that are handwritten notes by various individuals, relating to the so-called "offensive" against Beechwood. Many, but not all, of the notes were written by defendants, although some were authored by DOH employees who are not defendants in this action. Defendants contend that all these notes are inadmissible hearsay.

Plaintiffs have withdrawn their offer of six of these documents: Exhibits 203, 204, 284, 501, 526, and 569. In addition, as to Exhibit 402, which is a single page of notes that were apparently jotted down by some unidentified DOH employee in January 2001, plaintiffs contend that this

document is relevant to the issue of spoliation of evidence, "which will be the subject of a separate application by the plaintiffs." Plaintiffs' Mem. at 17. Plaintiffs state that they "will renew their offer of Exhibit 402, at such time as the other spoliation evidence is offered." *Id.*

As to the remaining thirty-six exhibits, plaintiffs argue that those that were authored by defendants are admissible as admissions by those defendants. In addition, they contend that the notes of DOH attorney Marie Shea are admissible as statements of defendants' agent, and that all of these exhibits are admissible as past recollections recorded.[1]

Whether these exhibits may actually be admitted cannot definitively be determined at this time. At the very least, a proper foundation must be laid to demonstrate their authorship and relevance. If plaintiffs seek to admit one of these documents as a past recollection recorded, a proper foundation must also be laid. Provided that plaintiffs meet those requirements, however, and barring any other reason for their exclusion, I see no basis to preclude these exhibits at this time.

## G. Non-party Affidavits, Interrogatories and Memoranda

Plaintiffs have included in their exhibit list some seventeen exhibits consisting of affidavits and interrogatory responses by individuals who are no longer defendants in this action. Defendants argue that these are inadmissible hearsay.

Plaintiffs respond that they do not intend to offer any of these exhibits during their case-in-chief, with the exception of Exhibit 205, which is addressed in § L, *infra*. In addition, plaintiffs state that they withdraw their offer of Exhibit 222 (an affidavit of DOH attorney Harold J. Rosenthal), but they reserve their right to offer it at trial, as relevant to the spoliation issue. Except for Exhibit 205, then, the Court need not rule on the admissibility of these exhibits at this time.

---

[1]Defendants do not appear to argue that Shea's notes are in any way privileged.

- 15 -

**H. Emails from Non-parties**

Defendants object to another forty-three exhibits that are copies of emails from non-parties.

Defendants contend that these are not relevant and that they are inadmissible hearsay.

Plaintiffs seek to admit sixteen of these documents as statements by agents of the defendants.

They further contend that two emails, by DOH employee Lisa Cahill, are admissible as business

records under Rule 803(6).

The Second Circuit has explained that

Rule 801(d)(2)(D) of the Federal Rules of Evidence defines as nonhearsay a statement offered against a party that is "a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship."  In order to introduce evidence of an out-of-court statement as nonhearsay under Rule 801(d)(2)(D), a party must lay a sufficient foundation by establishing "(1) the existence of the agency relationship, (2) that the statement was made during the course of the relationship, and (3) that it relates to a matter within the scope of the agency."

*Marcic v. Reinauer Transp. Companies*, 397 F.3d 120, 128-29 (2d Cir. 2005) (quoting *Pappas v.*

*Middle Earth Condominium Ass'n*, 963 F.2d 534, 537 (2d Cir. 1992)).  In addition, "admissibility

under Rule 803(6) requires both that a [document] have been 'kept in the course of a regularly

conducted business activity' and also that it was the 'regular practice of that business activity to

make the [document] ... .'" *United States v. Freidin*, 849 F.2d 716, 719–20 (2d Cir. 1988) (quoting

Rule 803(6)).

Under both those rules, then, a proper foundation must be laid before a document can be

admitted.  Provided that plaintiffs can meet that foundational requirement at trial, these exhibits are

not barred by the hearsay rule.  *See Penberg v. HealthBridge Mgmt.*, ___ F.Supp.2d ___, 2011 WL

4943526, at *17 (E.D.N.Y. 2011) ("A party seeking to introduce an email made by an employee

about a business matter under the hearsay exception under Rule 803(6) must show that the employer

imposed a business duty to make and maintain such a record") (quoting *Canatxx Gas Storage Ltd.*

*v. Silverhawk Capital Partners, LLC*, No. H-06-1330, 2008 WL 1999234, at *12 (S.D.Tex. May 8,

2008)); *Park W. Radiology v. CareCore Nat'l LLC*, 675 F.Supp.2d 314, 333 (S.D.N.Y.2009)

("Though an email may satisfy the business records exception under appropriate circumstances,

Plaintiffs do not show that the ... emails qualify" because the "employees were not under an obligation to create the emails as a record of regularly conducted business activity.").

Plaintiffs contend that seven other exhibits are relevant to the spoliation issue in this case. Apparently plaintiffs intend to show that defendants have "lost" or destroyed various records relating to Beechwood. *See* Plaintiffs' Mem. at 17. The Court cannot rule on that matter until it is squarely presented at trial.

Plaintiffs state that they withdraw their offer of the remaining exhibits within this category.

**I. Letters**

Defendants object to the introduction of various letters authored by non-defendants, as inadmissible hearsay.

Plaintiffs state that they withdraw their offer of one of these exhibits, #505, without prejudice. Another exhibit referred to by defendants, #519, was in fact authored by defendant Altone, and thus does not constitute hearsay. Fed. R. Evid. 801(d)(2).

A number of these letters were written by plaintiff Chambery. Plaintiffs state that these are not being offered for the truth of their contents, but as proof of Chambery's protected First Amendment activity. As the Second Circuit has stated, it is undisputed that Chambery engaged in protected speech, *see* 436 F.3d at 152, but plaintiffs must still establish that defendants were aware of that speech, and that they sought to retaliate against plaintiffs because of that speech.

Defendants contend that there is no evidence that defendants ever received or were made aware of these letters. In my view, that is a matter for proof and argument at trial, and does not go to the letters' admissibility. The same holds true with respect to Exhibit 301, which was authored by plaintiffs' attorney Kevin Cooman, which plaintiffs will offer to show Chambery's efforts to sell the Beechwood facility–efforts that, according to plaintiffs, were thwarted by defendants in order to punish Chambery for his protected speech.

As to Exhibits 135 and 153, which plaintiffs will offer as statements by defendants' agents, admission of these exhibits will depend upon plaintiffs' laying a proper foundation under Rule 801(d)(2)(D), as explained in § H, *supra*.

## J. Reports

Plaintiffs seek admission of various reports and charts. Defendants contend that these exhibits are irrelevant, that they constitute hearsay, and that they are excludable under Rule 403.

Plaintiffs respond that some of these exhibits are admissible as public records under Rule 803(8), since they are taken from DOH and other government databases. Plaintiffs also contend that these exhibits are admissible as summaries under Rule 1006.

Public records and reports are generally admissible, *see* Fed. R. Evid. 803(8)(C); *In re September 11 Litigation*, 621 F.Supp.2d 131, 154 (S.D.N.Y. 2009), as are summaries of other admissible, voluminous evidence, where such summaries will assist the jury. *See*, *e.g.*, *Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 53 (2d Cir. 1993). In their present form, however, and on the record now before me, the Court cannot issue a definitive ruling on these exhibits. Exhibit 551, for example, is a spreadsheet titled "1997 Medicare Rehabilitation Report." In lists 310 facilities, including Beechwood, along with information concerning their size, total Medicaid revenue, average length of stay, and other information. Whether this document, and others like it, are admissible, depends on the documents' authentication and the laying of a foundation, as well as a showing of relevance. Similarly, the admissibility of the summary charts submitted by plaintiffs depends first on the admissibility of the underlying facts and data that they purport to summarize. While the Court does not preclude their admission at this time, then, I also cannot decide at this juncture whether they will be admitted at trial.

**K. Letters of Interest**

Plaintiffs seek to introduce two letters sent to Chambery in 1999 by a prospective purchaser of the Beechwood facility, as evidence of Beechwood's value at the time that the offers were made. Defendants assert that these letters are irrelevant hearsay.

"Offers to buy and sell property may not be admissible as evidence of its fair market value. It depends on the specifics of each case." *Levy v. United States*, 402 Fed. Appx. 979, 982 (5th Cir. 2010) (evidence concerning purchase negotiations was admissible to show value, since "the proposals came from identified, sophisticated developers who could be reasonably expected to have investigated the value of the land before making a proposal," and, "presumably the developers could have been called to testify had the [opposing party] desired to test their knowledge under cross-examination").

Defendants' motion to preclude this evidence is granted. The offers stated that they were not binding, that they were based on "the limited information" that the prospective purchaser had received up to that point, and that the purchaser was "considering a purchase price of $4.6 million," "subject to our further review ... ." Ex. 525. Such an "offer," which never came to fruition, is simply too unreliable to constitute admissible evidence of the facility's value. *See, e.g.*, *Lentz v. Mason*, 32 F.Supp.2d 733, 743 (D.N.J. 1999) (mere offers or options to sell or purchase are not admissible evidence of fair market value) (applying New Jersey law); *In re Pullman Const. Industries, Inc.*, 103 B.R. 983, 986 (Bankr. N.D.Ill. 1989) (purchase offer that was conditioned upon potential buyer's investigation into value of debtor's assets was not admissible on issue of market value of assets); *Brummer v. State of New York*, 25 A.D.2d 245, 248-49 (4th Dep't 604) (generally, "an offer ... of purchase is inadmissible to show market value") (citations omitted).

**L. Regulations Arising from the *Langeveld* Litigation**

Defendants object to four exhibits (Plaintiffs' Exhibits 205, 225, 335 and 533) relating to regulations that were enacted as a result of an Article 78 proceeding that Beechwood brought against

DOH in late 1996 concerning the proposed discharge of a certain patient.   That proceeding was resolved by a consent order in March 1997.   Plaintiffs' Ex. 331.   Among the terms of that consent order were provisions that DOH would establish new procedures governing the transfer and discharge of nursing home residents.[2]

In a letter to Chambery dated July 3, 1997, defendant Laura Leeds, the then-Acting Director of the Bureau of Long Term Care Services for DOH, stated in response to an earlier letter from Chambery concerning "the regulations governing the discharge and transfer of nursing home residents in New York State" that "there is no easy or quick fix to what you identified as conflicting regulations," and that while "[t]he changes ordered by the court ... have begun," the "formal rule making process" would probably take at least a year to complete.   Plaintiffs' Ex. 224.

Leeds was correct in her prediction that the process would take at least a year.   New regulations were developed, within DOH, during 1998 and 1999, *see* Plaintiffs' Ex. 205, Ex.335, but new proposed regulations were not publicly announced until April 2000.   Plaintiffs' Ex. 225. According to plaintiffs, the notice of the proposed rule expired on May 2, 2001, with no new regulations being adopted.   *See* Plaintiffs' Ex. 533.

Defendants contend that "[t]he issue of whether the DOH made the actual regulations is not relevant to the issue of retaliation," and that "the documents would cause unfair prejudice, confusion of the issues and mislead the jury."   Defendants' Mem. of Law (Dkt. #275) at 18.   In their response, plaintiffs do not squarely address this argument, nor do they explain how this evidence is relevant to the issues in this case.

Plaintiffs state that "[t]he impact that the Langeveld Litigation and resulting Consent Order had on the DOH and many of the defendants in this case cannot be understated [sic]."   They add that "[t]he exhibits defendants seek to exclude chronicle DOH's efforts to comply with the terms of the

---

[2]According to the order, the state court granted DOH's motion to dismiss Beechwood's petition in January 1997, but the action continued between DOH and the resident, Edith Langeveld, who had filed a cross-petition against DOH.   The consent order was signed by the state court judge and the attorneys for DOH and Langeveld.   Plaintiffs' Ex. 331.

Consent Order in the Langeveld Litigation," and that once Beechwood was closed, Chambery had been "effectively silenced," and defendants essentially ceased to pursue development of new regulations, so that "DOH remains out of compliance [with the consent order] to this day." Plaintiffs' Mem. of Law (Dkt. #277) at 23-24.

While the Langeveld litigation may be significant to this case, however, that does not mean that every piece of evidence with any tangential relationship to that litigation should automatically come into evidence. Evidence concerning the fact of the litigation, and the consent order directing DOH to adopt new procedures, may be relevant as evidence of defendants' motive for retaliation, but I fail to see the relevance of evidence concerning the ensuing process within DOH to formulate new rules and regulations to comply with that order, or concerning DOH's ultimate failure to adopt new procedures.

For one thing, much of this evidence relates to events that occurred after Beechwood was closed. By then, any acts of alleged retaliation had already occurred. It appears that plaintiffs may seek to argue that once Beechwood had been shut down, defendants lost interest, or felt no need, to pursue the adoption of new regulations concerning the discharge or transfer of nursing home residents, but the relevance of that to the issue that will be before the jury–whether defendants retaliated against Chambery because of his protected speech–is so attenuated that I find this evidence inadmissible under Rule 403. This evidence is of little or no probative value as to plaintiffs' retaliation claim, and would mostly serve only to prejudice defendants. I therefore grant defendants' motion to exclude these exhibits.

## M. Tape Recording and Transcript

Defendants seek to exclude Plaintiffs' Exhibit 227, which is a recording and transcript of a June 11, 1999 voice mail message that former defendant Steven Steinhardt, defendants' then-attorney, left for defendants' attorney, Kevin Cooman, stating that DOH would not consent to the

appointment of a receiver at Beechwood.  Defendants contend that this is irrelevant, inadmissible hearsay.[3]

Plaintiffs respond that this evidence corroborates Chambery's testimony that he offered to have a receiver operate the Beechwood facility until the purported deficiencies had been corrected, and that defendants refused.  Plaintiffs state that they will offer evidence that this refusal was virtually unprecedented, and is evidence that defendants' main objective was to punish plaintiffs for Chambery's protected speech.  Plaintiffs also argue that Steinhardt's statements are admissible as statements of defendants' agent.

Defendants' arguments concerning this evidence are devoid of any analysis; they simply assert, in conclusory fashion, that it is irrelevant.  On the contrary, plaintiffs have alleged throughout this action that defendants did not simply seek to correct the problems at Beechwood, but that their goal was to leave plaintiffs with nothing more than "bricks & mortar to sell," as Altone put it in a memo to his supervisor in January 2000.  *See* Plaintiffs' Ex. 253.  Plaintiffs contend that had defendants' primary concern truly been the health and safety of Beechwood's residents, they would not have objected to Chambery's proposals to appoint a caretaker or to allow plaintiffs to transfer Beechwood's operating certificate to a third party.  Given that theory behind plaintiffs' claims, this evidence is clearly relevant to the issues to be decided by the jury.  I therefore deny defendants' motion to exclude this evidence.


**N. Time Records**

Defendants object to twenty-two exhibits that they describe as "time records of surveyors investigating Beechwood."  As with some of the other categories at issue, defendants contend, with no analysis, that these are irrelevant.

---

[3]Plaintiffs' claims against Steinhardt were dismissed by this Court in September 2011. 811 F.Supp.2d at 680-81.

Plaintiffs respond that these exhibits are admissible as business records under Rule 803(6), and as public records under Rule 803(8).  As to relevance, plaintiffs contend that these records will help establish "suspect chronology," *see Beechwood*, 436 F.3d at 153, by showing that, in contrast with ordinary DOH procedures, officials from DOH's Central Office in Albany were involved in the investigation of Beechwood before the local surveyors had any opportunity to report preliminary findings.  Plaintiffs also contend that these records will tend to refute defendants' assertion that revocation was warranted because of Beechwood's failure to correct its deficiencies, by showing that defendants could not possibly have reviewed plaintiffs' proposed plans of correction before issuing their revocation decision.

I see no basis to exclude this evidence at this time.  As stated, the Second Circuit has identified "suspect chronology–the close sequence of protest and scrutiny" as "sufficient evidence of retaliatory motive to survive summary judgment" in this case, *id.*, and plaintiffs have alleged throughout this litigation that Beechwood was treated differently from other facilities, by being subjected to closer scrutiny and by being given no effective opportunity to correct any alleged deficiencies.  Evidence that Beechwood was treated differently from similarly situated facilities is certainly probative of whether plaintiffs were retaliated against, *see, e.g.*, *Senno v. Elmsford Union Free School Dist.*, 812 F.Supp.2d 454, 476 (S.D.N.Y. 2011); *White v. Connecticut, Dep't of Corrections*, No. 08-CV-1168, 2010 WL 3447505, at *10 (D.Conn. Aug. 24, 2010), and therefore, provided that plaintiffs can lay a proper foundation for these exhibits, they are admissible.


**O. Relevancy**

Defendants list a host of exhibits that they contend are irrelevant hearsay, subject to exclusion under Rule 403.  Aside from a listing of the exhibit numbers, defendants do not elaborate on this assertion.  *See* Defendants' Mem. of Law (Dkt. #275) at 18-19.

Some of these exhibits are addressed elsewhere in this Decision and Order, with respect to the more specific objections raised by defendants.  To the extent that they are not so addressed, the

- 23 -

Court will not at this juncture engage in a document-by-document review of the laundry list submitted by defendants.  If defendants contend that a particular exhibit should be excluded as irrelevant, they may raise that objection at trial, or prior to trial, with more specificity and in the context of the claims to which these exhibits relate.


## P. Redaction

Defendants state in their brief that "there are many exhibits with [hand]writing on them which if admissible require redaction."  Defendants' Mem. of Law at 19.  Plaintiffs respond that if they seek to offer any such exhibits at trial, they will establish a foundation identifying the handwriting on those documents at the time the document is offered.  Accordingly, the Court will not issue any blanket ruling as to these exhibits at this time, but will defer ruling until trial, on a document-by-document basis.


## Q. Antonia Novello's Conviction and Dennis Whalen's Ethical Violation

Although plaintiffs have not indicated an intent to offer such evidence, defendants seek an order precluding plaintiffs from offering evidence of, or mentioning, a certain criminal conviction of defendant Novello.  Defendants also seek to preclude evidence relating to an ethical violation committed by defendant Dennis Whalen.

Defendants state that they do not intend to call Novello or Whalen as a witness, and that this evidence is irrelevant.  Plaintiffs respond that they do not intend to offer such evidence in their case in chief, although they may seek to use it in cross-examination.  Plaintiffs add that they may also seek to introduce this evidence, for impeachment purposes, if Novello and Whalen are unavailable to testify at trial, and if plaintiffs offer their deposition testimony during their case in chief.

A party is allowed to impeach a witness whose deposition testimony the party has read into the record in its case in chief.  *See Prater v. United Mine Workers of America, Districts 20 and 23*, 793 F.2d 1201, 1212 (11th Cir. 1986) (citing Fed. R. Evid. 607); *Radian Asset Assur., Inc. v. College*

*of Christian Bros. of New Mexico*, No. CIV. 09-0885, 2010 WL 5173316, at *4 (D.N.M. Nov. 15, 2010). In addition, Rule 609 permits a witness to be impeached with evidence of a prior conviction that involves dishonesty or false statement. *Olin Corp. v. Certain Underwriters at Lloyd's London*, 468 F.3d 120, 135 (2d Cir. 2006) ("a conviction for submitting false reports clearly" involves "dishonesty or false statement" under Rule 609). Plaintiffs may therefore seek to impeach Novello's testimony through use of her 2009 conviction.

At this point, however, I see no basis for allowing use of the state Ethics Commission's finding regarding Whalen's violation of the state Ethics Law. Whalen was not convicted of a crime, and I am not convinced that the Ethics Commission's finding falls within the scope of Rule 609, which permits impeachment of a witness through use of prior convictions of certain types of crimes. *See United States v. Werbrouck*, 589 F.2d 273, 277 (7th Cir. 1978) (trial court did not err in prohibiting defendant from attempting to impeach government witness by introduction of findings of municipal board of public works describing incident in which the witness, a former police officer, had planned to have friends plant drugs on persons whom witness intended to arrest; since "criminal conviction entails a finding of guilty beyond a reasonable doubt in a forum which abides by specific rules of evidence and procedure designed to protect the defendant. The findings of a municipal administrative forum do not fit within the language or intent of Rule 609"). Defendants' motion to preclude this evidence is therefore granted.

## II. Plaintiffs' Cross-Motion in Limine

### A. ALJ Decisions

Defendants seek to admit decisions of the state and federal administrative law judges ("ALJs") from the administrative proceedings involving Beechwood, and a decision of this Court concerning the federal administrative proceedings. In their cross-motion, plaintiffs state that they do not oppose the admission of the state ALJ's decision, provided that it is accompanied by a

cautionary instruction.  As directed by the Court at oral argument, plaintiffs have submitted a proposed cautionary instruction, which the Court will consider and rule on at a later time.

Plaintiffs do oppose admission of the prior decisions of the federal ALJ and of this Court. They argue that Beechwood's termination as a federal Medicare/Medicaid provider is not at issue here.  *See Beechwood*, 436 F.3d at 155 n.4 ("it is the revocation of Beechwood's *state* operating certificate, not Beechwood's termination as a *federal* Medicare/Medicaid provider, that is at issue in this case").  Plaintiffs also state that because they have not been able to depose the federal officials in this case, they would be unfairly prejudiced by the admission of this evidence.  Plaintiffs further argue that this Court did not "uphold" the federal administrative decision, as defendants contend, but that this Court found only that the claim relating to the federal ALJ's decision was moot.

An understanding of the relevant decisions and their sequence is necessary to understand these issues.  On October 3, 2001, the federal ALJ issued a decision in which he sustained the determinations of the Center for Medicare & Medicaid Services ("CMS," formerly known as the Health Care Financing Administration, or HCFA) to impose two remedies against Beechwood:  (1) termination of Beechwood's participation in the Medicare program effective June 17, 1999; and (2) denial of payment for new Medicare admissions, effective upon Beechwood's receipt of a notice from CMS dated May 21, 1999, informing Beechwood of CMS's decision to impose that remedy. *Beechwood Sanitarium v. CMS*, DAB CR821, 2001 WL 1329831 (Oct. 3, 2001).

Beechwood appealed from that decision, and on April 11, 2002, the Department of Health and Human Services' Departmental Appeals Board ("Board") issued a decision that, in effect, affirmed in part and reversed in part the ALJ's decision.  The Board held that the ALJ had erred in his rulings regarding certain subpoena requests made by Beechwood, and by dismissing Beechwood's request for a hearing on the directed plan of correction ("DPOC") imposed upon it by the state.  The Board rejected Beechwood's other procedural challenges to the ALJ's decision, but remanded to the ALJ for further proceedings, stating that "[t]he ALJ may reinstate some or all of the findings in the ALJ Decision in his subsequent consideration of the case."  The Board added that it

"ma[d]e no determination on any of the substantive aspects of the ALJ's evaluation of the evidence currently in the record or the parties' arguments on appeal about specific deficiencies" at Beechwood. *Beechwood Sanitarium v. CMS*, DAB 1824, 2002 WL 848030 (Apr. 11, 2002).

Following that remand, the ALJ issued another decision on October 28, 2002.  The ALJ summarized his decision by stating that he:  (1) declined to receive into evidence additional exhibits from Beechwood, on the ground that they were irrelevant; (2) found that Beechwood had "not offered any evidence or arguments based on documents that were produced as a result of the subpoena I issued on remand that justify my reopening or reconsidering the findings of fact or conclusions of law (Findings) that I made in my first decision addressing the merits of this case"; (3) "decline[d] to make additional Findings or to respond to any argument that Petitioner [*i.e.*, Beechwood] made on appeal of my first decision"; and (4) found that Beechwood had "failed to comply substantially with three" Medicare participation requirements, which meant that the state authorities were "authorized to impose a directed plan of correction against Petitioner addressing these three deficiencies."  DAB CR966, 2002 WL 31599189 (Oct. 28, 2002).

Beechwood again appealed.  On January 23, 2004, the Board issued its "Final Decision on Review of Administrative Law Judge Decision," in which the Board "sustain[ed] the ALJ's conclusions that Beechwood was not in substantial compliance with participation requirements and that CMS was authorized to impose the remedies appealed to us."  The Board therefore affirmed the ALJ's decisions, with two modifications concerning the ALJ's findings as to two individual residents, which, the Board stated, did "not affect the outcome of [its] evaluation of the deficiency findings to which the allegations were directed ... ."  The Board therefore "decline[d] Beechwood's request that [it] overrule the findings and conclusions of the ALJ sustaining deficiencies found in the April, May or June surveys," and "further decline[d] Beechwood's request that [the Board] remand to the ALJ to consider additional deficiency findings from the May and June survey which he did not address."  The Board stated that "[i]n the context of this case and the findings which [the Board had] sustained, any outcome of any further review of findings not already evaluated could not

- 27 -

alter the clear evidence of noncompliance of a kind more than adequate to support the imposition of the appealed remedies ... ."   The Board "conclude[d] finally that the ALJ did not err in concluding that CMS had the authority to impose the remedies appealed by Beechwood."  DAB 1906, 2004 WL 230866 (Jan. 23, 2004).

By the time of the first of these decisions, then, over two years had passed since Beechwood closed its doors.  Thus, these decisions have no direct causal relationship to the alleged harm here, or to the underlying issue of whether the defendants, who were employed by DOH, not by any federal agency, acted for retaliatory reasons.

Defendants argue that these decisions tend to support their assertion that their actions with respect to Beechwood were justified, and that defendants would have taken those actions even in the absence of any protected activity by Chambery.  The undisputed evidence, however, shows that it was the DOH that initiated and drove the proceedings against Beechwood.  *See Beechwood*, 436 F.3d at 150 (stating that in 1999, "DOH recommended to HCFA that Beechwood be terminated as a Medicare and Medicaid provider").  The fact that a federal ALJ later reviewed the written record developed by the DOH, and concluded that it supported a finding that there were deficiencies at Beechwood, has little bearing on why the current defendants, all of whom worked for DOH, acted as they did.

There is some authority that an ALJ's findings of fact may be admissible under Rule 803(8)(C), at least where those findings are made following an evidentiary hearing before the ALJ. *See, e.g., Zeus Enterprises, Inc. v. Alphin Aircraft, Inc.*, 190 F.3d 238, 242-43 (4th Cir. 1999); *Complaint of Paducah Towing Co., Inc.*, 692 F.2d 412, 420 (6th Cir. 1982); *Fitch v. R.J. Reynolds Tobacco Co.*, 675 F.Supp. 133, 138 (S.D.N.Y. 1987).  The primary issue here, however, is not whether the federal ALJ's findings meet the test of admissibility under Rule 803(8)(C); indeed, plaintiffs have disavowed any argument under Rule 803(8)(C); *see* Transcript (Dkt. #283) at 72.  The question is whether these decisions are sufficiently relevant to the issues that will be before the jury, and if so, whether their probative value will outweigh their prejudicial effect.  *Cf. Helfrich v. Lehigh*

*Valley Hosp.*, No. Civ.A. 03-CV-05793, 2005 WL 1715689, at *20 (E.D.Pa. July 21, 2005) ("the admissibility of the Referee's decision [under Rule 803(8) is not at issue.  Rather, the question is whether such a decision created a genuine issue of material fact").

At this point, the Court will not allow the federal administrative decisions to come into evidence, nor are counsel to mention them during their opening statements.  Depending on the proof at trial, the Court may revisit this issue at a later time, but at this point, the Court will preclude this evidence.  It appears that the standards applied by the state and federal administrative authorities were not identical, *see* Plaitniffs' Ex. C (Depo. Tr. of Susan Baker) at 832-35, and the risk of jury confusion that would be created by the introduction of this evidence would likely outweigh whatever probative value it might have.

The same ruling applies with respect to this Court's 2007 decision in this litigation.  Regardless of whether defendants have correctly characterized that decision as having "upheld the [federal] administrative decision," Def. Mem. of Law (Dkt. #275) at 22, that does not bear upon whether the DOH defendants retaliated against plaintiffs, which is the chief issue to be decided by the jury.  Furthermore, that the decision emanated from this Court would only magnify the risk that the jury would give it undue weight.

Again, the Court may revisit this matter, if the proof at trial develops in a way that renders these decisions particularly relevant, either with respect to their outcome or the factual findings contained in those decisions.  In particular, if plaintiffs prevail at the liability phase of the trial, these decisions may be sufficiently relevant as to damages to allow their admission in the subsequent damages phase of the trial.  But at this point, they are excluded.

## B. Deposition Exhibits

Defendants identify a number of deposition exhibits that they intend to offer at trial.  Plaintiffs object to two of them:  Exhibit 105, which is a prior handwritten statement of defendant

Cynthia Francis, dated April 19, 1999, and a portion of Exhibit 282, which is a statement of charges against Beechwood issued by DOH in June 1999.[4]

Francis's statement appears to be inadmissible hearsay. At this point, the Court will disallow it, absent some showing that it falls within an exception to the hearsay rule.

I reach the same result with respect to the statement of charges contained in Exhibit 282. Inasmuch as it consists only of allegations by DOH, the statement likewise appears to be rank hearsay. Again, if defendants can demonstrate its admissibility under some exception to the hearsay rule, the Court may allow it, but at this juncture I see no basis for its admission. *See Insignia Systems Inc. v. News America Marketing In-Store, Inc.*, No. 04-4213, 2011 WL 382964, at *2 (D.Minn. Feb. 3, 2011) ("[C]omplaints, and the charges and allegations they contain, are hearsay under the Federal Rules of Evidence") (internal quotation marks omitted).

## III. Jury Questionnaire

Plaintiffs have proposed sending a questionnaire to the prospective jurors in this case, in advance of trial, to help screen out jurors who, based on their awareness of the case, their prior experiences with, or feelings about, nursing homes, or for any other reason, could not fairly and impartially judge the facts of this case. I deny that request.

While the Court does have an obligation to take steps to ensure the impaneling of a fair and impartial jury, the precise methods used to achieve that end are left to the discretion of the Court. In particular, whether to use a written questionnaire is a matter for the Court's discretion. *See, e.g.*, *United States v. A.G.E. Enterprises, Inc.*, 15 Fed.Appx. 439, 447 (9th Cir. 2001); *United States v. Cowan*, 96 F.3d 1439 (table), 1996 WL 521049, at *1 (4th Cir. Aug. 26, 1999); United States v. Hoffman, No. 08CR40020-001, 2009 WL 464909, at *2 (W.D.Ark. Feb. 24, 2009).

---

[4]The other portion of Exhibit 282 is a notice of hearing dated June 7, 1999, to which plaintiffs do not object.

In this case, I believe that *voir dire* during jury selection can adequately fulfill that task. This case has received relatively little publicity in the news media, and the relevant events occurred many years ago. Although some members of the venire will undoubtedly have had some contact or experience with nursing homes, there is no reason to anticipate that an unusually large percentage of the jury pool will have such strong feelings about the general subject matter of this case that they cannot fairly sit as jurors, and those who do can be excused at the time of jury selection. The Court anticipates calling a substantial number of persons to report for jury duty, and the Court will certainly inquire about the jurors' relevant experiences, knowledge, and beliefs concerning nursing homes, the DOH, and other pertinent matters.

## CONCLUSION

Defendants' motion in limine (Dkt. #273) is granted in part and denied in part, as follows.

Defendants' motion to preclude plaintiffs from offering the August 18, 2003 Final Report of the Medicaid Fraud Control Unit is denied.

Defendants' motion to preclude plaintiffs from offering the April 10, 2003 memorandum by Jerry Solomon is granted, without prejudice to plaintiffs' offering excerpts from, or a redacted version of the report at a later time.

Defendants' motion to preclude admission of the June 21, 1999 decision of New York State Supreme Court Justice Francis A. Affronti, and related documents, is denied.

Defendants' motion to preclude plaintiffs from offering evidence relating to so-called settlement discussions between plaintiffs and DOH is denied. If defendants request that the Court give some particular cautionary instruction concerning this evidence, they must prepare a draft instruction, to be submitted to the Court no later than the pretrial conference in this case.

Defendants' motion to preclude evidence of correspondence between defendant Altone and other DOH employees is denied, though admission of these exhibits is again subject to plaintiffs' establishing a proper basis and foundation for their admission.

Defendants' motion to preclude evidence of their litigation responses is denied.

With respect to defendants' motion to preclude "witnesses' personal notes," plaintiffs have withdrawn their offer of exhibits 203, 204, 284, 501, 526, and 569.  The motion as to those exhibits is therefore denied as moot.  As to the remaining exhibits in this category, defendants' motion is denied, without prejudice.  Whether these exhibits may be admitted will depend on whether plaintiffs lay a proper foundation for their admission.

Defendants' motion to preclude so-called "letter of interest" is granted.

Defendants' motion to preclude evidence concerning regulations arising from the *Langeveld* litigation is granted, in part.  Although evidence concerning the fact of that litigation, and the consent order directing DOH to adopt new procedures as a result of that litigation, may be admissible, plaintiffs are precluded from offering evidence concerning the ensuing process within DOH to formulate new rules and regulations to comply with that consent order, or concerning DOH's ultimate failure to adopt new procedures.

Defendants' motion to preclude Exhibit 227, relating to a June 11, 1999 voice mail message from former defendant Steven Steinhardt, is denied.

Defendants' motion to preclude time records is denied.

Defendants' motion to preclude evidence of defendant Novello's criminal conviction is denied.  Their motion to preclude evidence of defendant Whalen's ethical violation is granted.

As to the other exhibits that defendants seek to preclude, the Court does not rule on their admissibility at this time.  Whether those exhibits may be admitted into evidence will be determined at trial, based upon the laying of a proper foundation, a showing of relevance, and the other considerations set forth in the body of this Decision and Order.

Plaintiffs' cross-motion in limine (Dkt. #276) is granted in part. Plaintiffs' motion to exclude prior federal administrative and judicial decisions from the evidence at trial is granted, without prejudice to defendants' application to admit this evidence upon a showing of its relevance and admissibility under the Federal Rules of Evidence.

Plaintiffs' motion to exclude defendants' exhibits 105 and 282 is granted.

Plaintiffs' request to use a jury questionnaire in advance of trial is denied.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
   April 13, 2012.

- 33 -